HARRIET S. RUMSEY et al., Respondents, *v.* THE NEW YORK AND NEW ENGLAND RAILROAD COMPANY, Appellant.

*It seems* that under the provisions of the act of 1842 (Chap. 306, Laws of 1842), requiring the secretary of state when an act as published in the session laws is certified "as having been passed by the assent of two-thirds of the members elected to each house" to state in connection with it as published in the Session Laws that it was passed "by a two-thirds vote" and that this statement shall be presumptive evidence that the bill was certified as having been so passed, the presumption thus created may be overcome by the production of the original certificate showing it was not so passed.

But while under the Revised Statutes (1 R. S. 156, § 3), no act shall be deemed to have been passed by a two-thirds vote unless so certified by the presiding officer of each house, a defective certificate which fails to state either way *i. e.*, as to whether or not the act was passed by a two-thirds vote, is not conclusive to overcome the presumption created by the statement of the secretary in the Session Laws.

In such case the journal of the house whose presiding officer has made the defective certificate may be resorted to for the purpose of determining the fact.

*It seems* it would not be proper to go back of the certificate, if in due form, for the purpose of impeaching it.

The act of 1850 (Chap. 283, Laws of 1850), which empowers the commissioners of the land office to grant to the proprietors of adjacent lands "so much of the lands under the waters of navigable rivers or lakes as they shall deem necessary to promote the commerce of this state or proper for the purpose of beneficial enjoyment of the same by the adjacent owner" is one requiring the assent of two-thirds of the members of both houses of the legislature. (State Const. art. 1, § 9; 1 R. S. 156, § 2.)

The legislature had authority to confer such power upon the said commissioners. (Const. art. 5, §§ 5, 6.)

As to whether the federal government can interfere with the right of the state to control and dispose of low flat lands covered with shallow water outside the navigable channel of a river, *quære.*

Where the Federal Government has not complained of such a grant and where it does not operate to interfere with navigation, no other party may be heard to complain.

The provision of the General Railroad Act of 1890 (Chap. 565, Laws of 1890) authorizing a railroad corporation to construct its road across or along any stream or water-course and removing the exception in the similar provision of the act of 1850 (Chap. 140, Laws of 1850), of the right to obstruct any navigable stream or lake, has no effect upon a patent for

lands under the waters of a navigable stream issued by the state prior to the passage of said act of 1850, and so, does not divest the patentee of any rights acquired under his patent.

Reported upon a former appeal, 114 N. Y. 423.

(Argued October 14, 1891; decided October 27, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 9, 1889, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*W. C. Anthony* for appellant.    The plaintiffs must prevail, if at all, on the strength of their own title.    As to that portion of the lands in question which were granted to the New York Central and Hudson River Railroad Company prior to plaintiffs' grant the latter have no title.    (Laws of 1850, chap. 140, §§ 25, 49 ; Laws of 1881, chap. 625.)    The plaintiffs have no valid title to any portion of the land described in the complaint. Their water grant is void.    (Laws of 1850, chap. 283 ; Cooley on Const. Lim. § 117 ; *Barto* v. *Himrod,* 8 N. Y. 483 ; *People* v. *Ins. Co.,* 92 id. 315 ; *State* v. *Hayes,* 61 N. H. 264 ; State Const. Art. 1, § 9 ; *People* v. *Comrs., etc.,* 54 N. Y. 276 ; *People* v. *Allen,* 42 id. 378 ; *Martin* v. *Waddell,* 16 Pet. 410 ; *McCready* v. *Virginia,* 94 U. S. 391 ; *Hoboken* v. *P. R. R. Co.,* 124 id. 656 ; *Stockton* v. *N. Y. & B. R. R. Co.,* 32 Fed. Rep. 19 ; *Hill* v. *U. S.,* 39 id. 172 ; *Wilson* v. *B. C., etc., Co.,* 2 Pet. 245 ; *Gibbons* v. *Ogden,* 9 Wheat. 1.)    The General Railroad Act (Chap. 140, Laws of 1850, as amended by subd. 4, § 4, chap. 565, Laws of 1890), authorized this railroad to be constructed between the termini designated in its certificate, and " across, along or upon any stream or water-course which the route of the road should intersect or touch," not excluding navigable streams.    (*Bridge Co.* v. *R. R. Co.,* 6 Paige, 554 ; *People* v. *R. & S. R. R. Co.,* 15 Wend. 114.)    The ultimate

control of the lands in question rests with the congress of the United States. (*South Carolina* v. *Georgia*, 93 U. S. 4; U. S. R. S. §§ 3964, 5263.)

*H. H. Hustis* for respondent. Chapter 283 of the Laws of 1850, entitled " An act to amend the Revised Statutes relating to grants of land under water," passed April 10, 1850, is valid. (*People* v. *Purdy*, 2 Hill, 34 ; *Purdy* v. *People*, 4 id. 384; *People* v. *Devlin*, 33 N. Y. 280 ; *People* v. *Purdy*, 54 id, 276.)

HAIGHT, J. This action was brought to restrain the defendant from operating its railroad upon lands claimed to belong to the plaintiffs.

The defendant's road at the village of Fishkill Landing was constructed in the year 1881, in the Hudson river upon lands under water in front of uplands owned by the plaintiffs. On the 3d day of March, 1885, the governor of the state, pursuant to a resolution of the commissioners of the land office, issued to the plaintiffs a patent of the lands under water in the Hudson river in front of their uplands, being about one thousand feet on the shore line and along the bank of the river, and about two thousand feet from high-water mark to the channel bank of the river, excepting therefrom the rights of the New York Central and Hudson River Railroad Company.

It is contended that the plaintiffs obtained no valid title to the lands under water by reason of this patent for the reason that it was issued under and pursuant to chapter 283 of the Laws of 1850, which act provides for the appropriation of public property to a private use, and because it is not certified to have passed the assembly by a two-thirds vote.

The act provides that: " The commissioners of the land office shall have power to grant in perpetuity or otherwise so much of the lands under the waters of navigable rivers or lakes as they shall deem necessary to promote the commerce of this state, or proper for the purpose of beneficial enjoyment of the same by the adjacent owner, but no such grant shall be made to any person other than the proprietor of the adjacent

lands, and any such grant that shall be made to any other person shall be void."

No question is made but that the certificate of the presiding officer of the senate is in due form.

That of the assembly is as follows:

## "STATE OF NEW YORK.

"IN ASSEMBLY — *April* 10, 1850.

"This bill was read the third time and passed, two-thirds of all the members elected to the assembly being present on its final passage.

"By order of the assembly.

## "F. C. DININNY.

"*Speaker pro tem.*"

The statute provides that the assent of two-thirds of the members elected to each branch of the legislature is requisite to every bill appropriating the public moneys or property for local or private purposes; and no bill shall be deemed to have passed by the assent of two-thirds of the members elected to each house, unless so certified by the presiding officer of each house.  (1 R. S. [7th ed.] 432, §§ 2, 3.)

The act in question is doubtless one which required the assent of two-thirds of the members elected to each branch of the legislature, and the certificate of the presiding officer of the assembly is defective in not showing whether it received the assent of a majority or two-thirds of the members elected.

The act as published in the Session Laws states that it was by a two-thirds vote.  This statement is made in accordance with the provisions of chapter 306 of the Laws of 1842, which makes the same presumptive evidence that the bill was certified by the presiding officers as having been passed by the assent of two-thirds of the members elected to each house. This presumption, however, may doubtless be overcome by the production of the original certificate.  The certificate produced, however, does not state that it was not passed by a two-thirds vote.  It merely states that it was passed; that the two-thirds of the members elected to the assembly were pres-

ent.   The certificate, therefore, independent of the statute referred to, would not overcome the presumption created by the statement appearing in the Session Laws.   Under the statute the act shall not be deemed to have been passed by the assent of two-thirds, unless the presiding officer so certifies, but this statute evidently contemplates that the certificate be made in due form, free from defects and clerical errors.   Such a certificate would doubtless be conclusive ; but to hold that a defective certificate, one that fails to state the fact either way, is under the statute conclusive and overcomes the presumption created by the statement appearing in the Session Laws, is giving the statute an interpretation which we think was never intended.   May we, under these circumstances, look at the journal of the assembly for the purpose of determining the fact ?

In the case of *People* v. *Purdy* (2 Hill, 31–34), Bronson, J., in delivering the opinion of the court said : " It has not been denied that the judicial tribunals of the state may in some way look behind the printed statute book for the purpose of ascertaining whether bills coming within the two-thirds clause of the Constitution have received the requisite number of votes, and although I have felt a good deal of difficulty on that question I am inclined to the opinion that such an inquiry may be instituted.   The question is no doubt one of great delicacy but if the courts have the right to entertain it the duty is imperative and we are not at liberty to shrink from its performance."

These views were approved by the Court of Errors on the review of the case.   (4 Hill, 384.)

And to the same effect is the case of *People ex rel. Purdy* v. *Commissioner of Highways of the Town of Marlborough* (54 N. Y. 276).

It is quite possible, however, that the courts would not be justified in going back of the original act on file in the secretary of state's office, and the certificates thereto attached, for the purpose of impeaching them.   (*People* v. *Devlin*, 33 N. Y. 269.)

But in this case, as we have seen, the certificate of the presiding officer of the assembly is not in due form. It shows that the bill was passed, but not whether it was passed by a majority or a two-thirds vote. The omission to state that fact was evidently a clerical error, and under these circumstances we are inclined to the opinion that we may look back to the journal for the purpose of ascertaining the fact.

Upon an inspection of the journal of the assembly for 1850, volume 1, page 1268, it appears that the act in question was passed unanimously by the assembly; 101 votes in the affirmative and none against it, more than two-thirds of all the members voting therefor.

It is claimed that the act of 1850 contravenes the Constitution because it tends to delegate the powers and functions of the legislature. As we have seen the act gives to the commissioners of the land office the power to grant lands under the waters of navigable rivers or lakes to promote the commerce of the state or for the purpose of beneficial enjoyment by the adjacent owner.

The Constitution provides that the lieutenant-governor, speaker of the assembly, secretary of state, comptroller, treasurer, attorney-general and state engineer and surveyor shall be the commissioners of the land office, and that their powers and duties "shall be such as now are or hereafter may be prescribed by law." (Const. art. 5, §§ 5, 6.)

This appears to give to the legislature in express terms the authority to prescribe the powers and duties of the commissioners of the land office, which has been done by the act in question.

It is also claimed that the state holds a qualified title to the lands under the waters of navigable rivers open to the sea, and that it has no right to appropriate them to a private use inconsistent with that of the people of the United States for the purpose of commerce and navigation. Suppose this to be so. The United States, however, is not here complaining of any encroachment upon the rights of interstate commerce, and there is no pretense that the grant in question operates to

interfere with the navigation of the river.   Under the findings of the trial court the grant only extends to the channel bank of the river and it could not, therefore, well interfere with the navigation thereof, even though the land granted should be covered with buildings.   We do not understand that the United States has ever made any claim to the low, flat lands covered with shallow water outside of the deep channel of navigable rivers, or that it has interfered with the right of the state to control and dispose of the same.   (*Willson* v. *Black Bird Creek Marsh Company*, 2 Peters 245 ; *Kerr* v. *West Shore Railroad Company*, 37 N. Y. St. Rep. 913–916.)

Chapter 140 of the Laws of 1850, which gave to railroad corporations the right to construct their roads across, along or upon any stream of water, water-course, street, highway, plank-road, turnpike or canal excepts from the provisions of the act the right to obstruct any navigable stream or lake.

Chapter 565 of the Laws of 1890, removing such exception was passed since the patent was issued by the state to the plaintiffs herein, and that act consequently could not divest the plaintiffs of any previously acquired rights to the lands in question.

This case has already been considered in this court upon a former appeal (114 N. Y. 423), in which the questions not herein considered were disposed of.   (See also same parties, 125 N. Y. 681 ; 34 N. Y. St. Rep. 454.)

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.